## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
                                         :
In re:                                   :   Chapter 11
                                         :
ExGen Texas Power, LLC, et al.,¹         :   Case No. 17-_____ (___)
                                         :
              Debtors.                   :   Joint Administration Requested
-----------------------------------------------------------------x
```

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND
### FINAL ORDERS AUTHORIZING PAYMENT OF
### PREPETITION CLAIMS OF POSSESSORY CLAIMANTS

The above-captioned debtors (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Interim Order"), and a final order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Final Order" and together with the Proposed Interim Order, the "Proposed Orders"), pursuant to Sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors to pay certain prepetition claims held by potential lien claimants and (ii) authorizing financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion. In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of David Rush in Support of Chapter 11 Petitions and First Day Motions* (the "First

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ExGen Texas Power, LLC (4129), ExGen Texas Power Holdings, LLC (2209), Wolf Hollow I Power, LLC (6945), Colorado Bend I Power, LLC (9083), Handley Power, LLC (4091), Mountain Creek Power, LLC (6288), and LaPorte Power, LLC (5101). The mailing address of each of the Debtors, solely for purposes of notices and communications, is: 1310 Point Street, Baltimore, MD 21231.

Day Declaration")[2] filed with the Court contemporaneously herewith.  In further support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1.	The Court has jurisdiction over the Debtors, their estates, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).

2.	Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.	Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order on this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

4.	On the date hereof (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.	The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtors' chapter 11 cases.

---

[2] Capitalized terms used but not otherwise defined herein shall the meanings ascribed to them in the First Day Declaration.

2

RLF1 18428105v.1

6.      Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the First Day Declaration.

## Relief Requested

7.      By this Motion, the Debtors respectfully request entry of the Proposed Orders, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, authorizing, but not directing, the Debtors to pay the Possessory Claims held by the Possessory Claimants (each as defined below).

8.      The Debtors further request that the Court authorize financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and the Debtors have sufficient funds standing to their credit with such bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and that all such financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry, and without liability for following the Debtors' instructions.

## The Possessory Claimants

9.      As more particularly described in the First Day Declaration, the Debtors own five gas-fired electric generation projects in the North and Houston zones of the Electric Reliability Council of Texas power market (the "Projects").  The Debtors' businesses are dependent upon their ability to generate revenue at the Projects, which, in turn, is dependent upon the Debtors' timely access to various essential goods and services.  Absent access to these essential goods and services, the Debtors cannot, among other things, generate electricity and maintain compliance

3

with environmental regulations.  To that end, the Debtors heavily rely upon several groups of third-party suppliers for vital goods and services, including the following: (i) truckers, shippers, and other transportation service providers (collectively, the "Shippers"); (ii) providers of repair and maintenance services (the "Materialmen"); and (iii) warehousemen (the "Warehousemen," and together with the Shippers and Materialmen, the "Possessory Claimants").  The Possessory Claimants may hold or claim a variety of statutory, common law, or possessory liens that—if asserted—could materially impair the operation of the Projects.  As is described in greater detail below, the Debtors believe that payment of the claims held by the Possessory Claimants (collectively, the "Possessory Claims") is vital to the continued operations of the Projects and, thus, to their effort to preserve and maximize value for all stakeholders.  Accordingly, as is described in greater detail below, the Debtors are seeking the authorization to pay up to $400,000 in Possessory Claims upon entry of the Proposed Interim Order and $810,000 in Possessory Claims upon entry of the Proposed Final Order.  For the avoidance of doubt, the relief requested under this Motion is limited to third-party Possessory Claimants, and none of Exelon Generation Company, LLC nor any of its affiliates shall be Possessory Claimants for purposes of this Motion.

10.    In addition, the Debtors propose that any payments made pursuant to this Motion be subject to the following conditions:

i.    The Debtors will work jointly with the Ad Hoc Committee to determine which parties, if any, are entitled to payment under this Motion, and will obtain the consent of Secured Lenders constituting Required Lenders prior to making any payments on account of Possessory Claims;[3] and

ii.    prior to making a payment to a Possessory Claimant under this Motion, the Debtors may, after consultation with the Ad Hoc Committee and after

---

[3] For the avoidance of doubt, it is not a requirement for a Possessory Claimant to receive a payment under this Motion for it to be finally determined that such lien exists.

4

obtaining the consent of Secured Lenders constituting Required Lenders, settle all or some of the Possessory Claims of such Possessory Claimant for less than their face amount without further notice or hearing.

**A.      Shippers**

11.      In the ordinary course of their businesses, the Debtors utilize the Shippers to transport and deliver goods, materials, equipment, and other property related to the operation of the Projects (the "Goods").  As of the Petition Date, the Debtors believe that they are current with respect to amounts owed to Shippers but estimate that up to $10,000 in such amounts may potentially be outstanding (the "Shipping Claims").

12.      Failure to pay the Shipping Claims could result in costly delays and disruption to the operation of the Projects and otherwise erode the value of the Debtors' estates.  Specifically, under applicable nonbankruptcy law (whether federal or state statutory or common law), a Shipper may have a lien on the Goods in its possession, which secures the charges or expenses incurred in connection with the transportation or storage of the Goods.  *See* U.C.C. § 7-307(a) (2003).  In addition, pursuant to section 363(e) of the Bankruptcy Code, the Shippers, as bailees, may be entitled to adequate protection for any valid possessory lien.  If the Debtors do not pay the Shipping Claims on a timely basis, the Shippers may assert that they have possessory and other liens on the Goods currently in their possession for transportation or storage costs, and may refuse to deliver or release those Goods until their invoices are paid and their liens redeemed.  A Shipper may also simply refuse to deliver the Goods if they are not paid, regardless of whether they may assert a lien.  In either scenario, failure to release the Goods has the potential to severely disrupt the Debtors' businesses to the detriment of the Debtors and their stakeholders. Further compounding any potential negative consequences of failing to pay the Shipping Claims, the value of any Goods in the Shippers' possession may potentially exceed the value of the Shipping Claims, which means that if the Shippers exercise possessory rights over such Goods,

5

such actions may erode the value of the Debtors' estates.  Accordingly, out of an abundance of caution, the Debtors request authority to pay up to $10,000 in Shipping Claims upon entry of the Proposed Interim Order.

**B.      Materialmen**

13.      The Debtors routinely transact business with the Materialmen for routine repairs, maintenance, and refurbishment.  The Debtors estimate that $200,000 is owed to Materialmen as of the Petition Date (the "Materialmen Claims").  As a result, certain of the Materialmen may have a right to assert possessory, mechanics', or artisans' liens against the Debtors' property.  *See, e.g.*, TEX. PROP. CODE ANN. § 53.021 (West 2003) (materialmen's lien).  Similarly, under applicable state laws, Materialmen generally have a lien against property serviced by the Materialmen securing the charges or expenses incurred in connection with the maintenance or servicing of such property.  In addition, unless the Materialmen Claims are paid, the Materialmen may refuse to perform their ongoing obligations to the Debtors or may refuse to release finished goods or repaired equipment in their possession.  In any of those circumstances, the operation of the Projects may be disrupted.  Accordingly, to ensure that the operation of the Projects is not disrupted by Materialmen refusing to provide necessary services, asserting liens on the Debtors' property and/or refusing to release the Debtors' property, the Debtors request authority to pay up to $110,000 in Materialmen Claims upon entry of the Proposed Interim Order and up to $200,000 in Materialmen Claims upon entry of the Proposed Final Order.

**C.      Warehousemen**

14.      Lastly, the Debtors rely on the Warehousemen to store various equipment and spare parts that are used in the operation of the Projects that would otherwise be difficult or prohibitively costly to obtain on a purchase order or as-needed basis.  As of the Petition Date, the

Debtors estimate that property valued at $5.7 million is being held by the Warehousemen.  In addition, the Debtors estimate that $600,000 is owed to the Warehousemen as of the Petition Date (the "<u>Warehousemen Claims</u>").  As a result, certain of the Warehousemen may have a right to assert possessory and other liens on the Debtors' property in their possession, refuse to release such property or block the Debtors' access to such property unless the Warehousemen Claims are satisfied and their liens, if any, are redeemed.  *See* U.C.C. § 7-209(a).  Again, in either circumstance, the operations of the Projects may be disrupted to the detriment of the Debtors and their stakeholders. Further, because the value of the Debtors' property being held by the Warehousemen exceeds the value of the Warehousemen Claims, any acts by the Warehousemen to exercise possessory rights over such property may erode the value of the Debtors' estates. Accordingly, to ensure that the operation of the Projects is not disrupted by Warehousemen refusing to release the Debtors' property and to prevent further erosion of the Debtors' estates, the Debtors request authority to pay up to $280,000 in Warehousemen Claims upon entry of the Proposed Interim Order and up to $600,000 in Warehousemen Claims upon entry of the Proposed Final Order.

<u>**Basis for Relief Requested**</u>

**A.     Relief Here is Necessary Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity.**

15.     Section 105 of the Bankruptcy Code provides that a Court "may issue any order . . . that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a).  The doctrine of necessity further supports the relief requested herein.  The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the restructuring efforts.  *See In re Lehigh & New*

7

*England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (payment of creditors' claims authorized under "necessity of payment" doctrine); *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (noting that the debtors "may pay pre-petition claims that are essential to continued operation of business"); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor.").

16.     As more fully set forth above and in the First Day Declaration, absent payment, the Possessory Claimants could assert liens and withhold essential goods or services that would severely disrupt, if not cripple, the operation of the Projects.  To carry out the provisions of the Bankruptcy Code, the Debtors need to preserve the going concern value of their businesses and achieve their objectives in these chapter 11 cases.  Accordingly, payment of the Possessory Claims is necessary and appropriate relief and should be granted.

**B.     Use of Estate Assets to Pay the Possessory Claims Is Appropriate Pursuant to Section 363 of the Bankruptcy Code.**

17.     Additional authorization for the payment of the Possessory Claims may be found in section 363 of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code authorizes the trustee to use property of the estate other than in the ordinary course of business after notice and a hearing.  11 U.S.C. § 363(b)(1).  For a court to authorize the payment of prepetition claims under section 363, the debtor must show that a "sound business purpose justifies such actions."

8

*In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (section 363(b) provides "broad flexibility" for a court to authorize a debtor to honor and satisfy prepetition claims supported by an appropriate business justification).   Courts have relied on section 363 to authorize the payment of prepetition claims held by suppliers.  *See, e.g.*, *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (affirming bankruptcy court's decision, pursuant to section 363, authorizing contractor to pay prepetition claims of some suppliers who were potential lien claimants).

18.     The Debtors submit that payment of the Possessory Claims is justified by a sound business purpose because the assertion of liens, refusal of goods and services, or withholding of goods and services would have detrimental effects on the operation of the Projects and endanger the success of these chapter 11 cases.  Accordingly, the relief requested herein is proper under section 363 of the Bankruptcy Code and should be granted.

19.     Additionally, Section 9-333 of the Uniform Commercial Code grants to creditors holding possessory liens, such as the Possessory Claimants, a priority in payment over consensual lien creditors. Thus, under the Bankruptcy Code, to the extent of the value of the Debtors' property in their possession, certain of the Possessory Claimants may be entitled to receive payment in full for these charges under virtually any scenario in connection with these chapter 11 cases. Therefore, payment of the Possessory Claims at this juncture will not disadvantage other creditors but will save the Debtors' businesses needless disruption and additional costs.

C.      **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

20.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  Also, under the Debtors' cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the obligations discussed herein.

21.     Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtors have sufficient funds standing to their credit with such financial institution, and such financial institution may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.  The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic fund transfers in replacement of any checks or transfer requests on account of the Possessory Claims dishonored or rejected as a result of the commencement of these chapter 11 cases.

## Reservation of Rights

22.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of any of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any

agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtors' rights to dispute such claim subsequently.  In addition, nothing in this Motion is intended to be or shall be construed as an admission as to the validity of any lien that any Possessory Claimant may hold, possess or assert against the Debtors or any of the Debtors' assets.

23.    Additionally, nothing in this Motion is intended to modify or waive any of the Debtors' rights with respect to goods and services requested or received from the Possessory Claimants, including the Debtors' rights to: (i) cancel a purchase order; (ii) decline the acceptance of goods and services; (iii) return any defective, nonconforming or unacceptable goods; or (iv) contest the amount of any invoice or claims on any grounds.

### The Debtors Satisfy Bankruptcy Rule 6003(b)

24.    Bankruptcy Rule 6003(b) provides that, if relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  As described herein and in the First Day Declaration, the Debtors' estates would suffer immediate and irreparable harm if the relief sought herein is not promptly granted. Based on the foregoing, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Request for Waiver of Bankruptcy Rules 6004(a) and (h)

25.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained

11

above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day (14) stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Notice

26.     Notice of this Motion and any order entered hereon shall be provided to: (i) the U.S. Trustee; (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the Ad Hoc Committee; (iv) counsel to the Secured Agent; (v) the United States Attorney's Office for the District of Delaware; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; and (viii) any other party entitled to notice pursuant to Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

## No Prior Request

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page left intentionally blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders

granting the relief requested herein and such other and further relief as the Court may deem

proper.

Dated: November 7, 2017       **RICHARDS, LAYTON & FINGER, P.A.**
      Wilmington, Delaware

/s/     *Daniel J. DeFranceschi*
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
      heath@rlf.com
      shapiro@rlf.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
**ExGen Texas Power, LLC**, *et al.*,[1]                     :    Case No. 17-_____ (___)
                                                             :
                     Debtors.                                :    **Joint Administration Requested**
                                                             :    Re: Docket No. ___
-------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING PAYMENT OF
## PREPETITION CLAIMS OF POSSESSORY CLAIMANTS

Upon the motion (the "Motion")[2] of the above-captioned debtors (collectively, the

"Debtors") for entry of an interim order (this "Interim Order"), pursuant to sections 105(a) and

363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not

directing, the Debtors to pay the Possessory Claims; and (ii) authorizing financial institutions to

receive, process, honor, and pay all checks presented for payment and electronic payment

requests relating to the foregoing to the extent directed by the Debtors in accordance with the

Motion, all as further described in the Motion; and upon consideration of the First Day

Declaration; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware dated February 29,

2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ExGen Texas Power, LLC (4129), ExGen Texas Power Holdings, LLC (2209), Wolf Hollow I Power, LLC (6945), Colorado Bend I Power, LLC (9083), Handley Power, LLC (4091), Mountain Creek Power, LLC (6288), and LaPorte Power, LLC (5101).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is: 1310 Point Street, Baltimore, MD 21231.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis, as set forth herein.

2.      The Debtors are authorized, but not directed, after consultation with the Ad Hoc Committee and after obtaining the consent of the Secured Lenders constituting Required Lenders, to pay the Possessory Claims, subject to the terms and conditions of this Interim Order; provided, however, that the amount of Possessory Claims that the Debtors are authorized to pay pursuant to this Interim Order shall not exceed $400,000 in the aggregate.

3.      Prior to making a payment to any Possessory Claimant on account of a Possessory Claim, the Debtors may, after consultation with the Ad Hoc Committee and after obtaining the consent of Secured Lenders constituting Required Lenders, settle all or some of the Possessory Claims of such Possessory Claimant for less than their face amount without further notice or hearing.

4.      In accordance with this Interim Order, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the

2

Motion are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

5.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition obligations and claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

6.      Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of any of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code, or (v) an admission as to the validity of any lien that any Possessory Claimant may hold, possess or assert against the Debtors or any of the Debtors' assets.

7.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

3

8.      All payments authorized by this Interim Order may be made solely to the extent in compliance with the Approved Budget (as defined in the interim or final order approving the Debtors' use of cash collateral (the "Cash Collateral Order")) then in effect.  To the extent there is any inconsistency between the terms of this Interim Order and the Cash Collateral Order, the terms of the Cash Collateral Order shall control.

9.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2017 at ___:___ __.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion (each, an "Objection") **shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2017,** and served on the following parties: (a) proposed counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq. and Paul N. Heath, Esq.); (b) counsel to ExGen, DLA Piper LLP (US), 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn: Richard A. Chesley, Esq. and Daniel Simon, Esq.) and 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn: Kaitlin M. Edelman, Esq.); (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, Delaware 19801, (Attn: Benjamin A. Hackman, Esq.); (d) counsel to the Ad Hoc Committee, Wachtell, Lipton, Rosen & Katz, 51 W. 52nd Street, New York, New York 10019 (Attn: Scott K. Charles, Esq. and Neil M. Snyder, Esq.); (e) counsel to the Secured Agent, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, New York 10019 (Attn: Louis R. Strubeck, Jr., Esq.); and (f) counsel to any official committee of unsecured creditors appointed in these cases. In the event no Objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing

4

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: _____, 2017
            Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 18428105v.1

**<u>EXHIBIT B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x
:
In re:                                              :    Chapter 11
                                                    :
**ExGen Texas Power, LLC**, *et al.*,[1]            :    Case No. 17-_____ (___)
                                                    :
         Debtors.                                   :    **(Jointly Administered)**
-----------------------------------------------------------------x

## FINAL ORDER AUTHORIZING PAYMENT OF
## PREPETITION CLAIMS OF POSSESSORY CLAIMANTS

Upon the motion (the "Motion")[2] of the above-captioned debtors (collectively, the

"Debtors") for entry of an interim order (this "Final Order") pursuant to sections 105(a) and 363

of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not directing,

the Debtors to pay the Possessory Claims; and (ii) authorizing financial institutions to receive,

process, honor, and pay all checks presented for payment and electronic payment requests

relating to the foregoing to the extent directed by the Debtors in accordance with the Motion, all

as further described in the Motion; and upon consideration of the First Day Declaration; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated February 29, 2012; and this Court having

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ExGen Texas Power, LLC (4129), ExGen Texas Power Holdings, LLC (2209), Wolf Hollow I Power, LLC (6945), Colorado Bend I Power, LLC (9083), Handley Power, LLC (4091), Mountain Creek Power, LLC (6288), and LaPorte Power, LLC (5101).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is: 1310 Point Street, Baltimore, MD 21231.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

§§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis, as set forth herein.

2.      The Debtors are authorized, but not directed, after consultation with the Ad Hoc Committee and after obtaining the consent of Secured Lenders constituting Required Lenders, to pay the Possessory Claims, subject to the terms and conditions of this Final Order; <u>provided</u>, <u>however</u>, that the amount of Possessory Claims that the Debtors are authorized to pay pursuant to this Final Order shall not exceed $810,000 in the aggregate.

3.      Prior to making a payment to any Possessory Claimant on account of a Possessory Claim, the Debtors may, after consultation with the Ad Hoc Committee and after obtaining the consent of Secured Lenders constituting Required Lenders, settle all or some of the Possessory Claims of such Possessory Claimant for less than their face amount without further notice or hearing.

4.      In accordance with this Final Order, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that

2

sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

5.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition obligations and claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

6.      Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of any of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code.

7.      Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

8.      All payments authorized by this Final Order may be made solely to the extent in compliance with the Approved Budget (as defined in the interim or final order approving the Debtors' use of cash collateral (the "Cash Collateral Order")) then in effect.  To the extent there

3

is any inconsistency between the terms of this Final Order and the Cash Collateral Order, the terms of the Cash Collateral Order shall control.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

10.      The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Final Order.

11.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.


Dated: _____, 2017
          Wilmington, Delaware


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

4